No. 15-1883

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

B.E. TECHNOLOGY, L.L.C.,
Appellant,

v.

GOOGLE, INC.,
Appellee.

On Appeal From the United States Patent and Trademark Office
Before The Patent Trial and Appeal Board
Case IPR2014-00031
IPR2014-00033

## APPELLANT'S OPENING BRIEF

ROBERT E. FREITAS
DANIEL J. WEINBERG
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:   (650) 593-6300
Facsimile:   (650) 593-6301

Attorneys for Appellant
B.E. Technology, L.L.C.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................3

STATEMENT OF RELATED CASES ........................................................4

JURISDICTIONAL STATEMENT ............................................................5

STATEMENT OF THE ISSUES.................................................................5

STATEMENT OF THE CASE.....................................................................5

STATEMENT OF FACTS ...........................................................................6

SUMMARY OF THE ARGUMENT ..........................................................9

ARGUMENT ..............................................................................................13

I.      STANDARD OF REVIEW ..............................................................13

II.     CLAIMS 2 AND 3 ARE NOT ANTICIPATED BY KIKINIS ...................14

    A.      Kikinis Does Not Disclose "A Program Stored On Said Non-Volatile Data Storage Device" That Satisfies The Limitations Of Claim 2 ...............................................................14

    B.      The One-To-One Association Of Links And Files Is Not Present In Kikinis ...............................................................23

        1.      The Association Of Specific Links With Specific Files Is Not Disclosed In Kikinis...........................................24

        2.      The Board Unsuccessfully Shifts Gears In Its Final Decision ...............................................................30

III.    CLAIMS 2 AND 3 ARE NOT INVALID FOR OBVIOUSNESS OVER FOLEY...............................................................32

    A.      Foley Does Not Disclose "A Program Stored On Said Non-Volatile Data Storage Device" That Satisfies The Limitations Of Claim 2 ...............................................................32

    B.      Foley Does Not Disclose A "User Library."....................................36

IV.     THE BROADEST REASONABLE INTERPRETATION STANDARD SHOULD NOT APPLY IN INTER PARTES REVIEW PROCEEDINGS...............................................................40

V.      CONCLUSION...............................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Belkin International, Inc. v. Kappos*,
  696 F.3d 1379 (Fed. Cir. 2012) ..........................................................13

*Consol. Edison Co. v. N.L.R.B.*,
  305 U.S. 197 (1938)...........................................................................14

*In re Constr. Equip. Co.*,
  665 F.3d 1254 (Fed. Cir. 2011) ..........................................................14

*Cooper Techs. Co. v. Dudas*,
  536 F.3d 1330 (Fed. Cir. 2008) ..........................................................41

*In re Cuozzo Speed Techs., LLC*,
  793 F.3d 1268 (Fed. Cir. 2015) ..................................................*passim*

*In re Garner*,
  508 F.3d 1376 (Fed. Cir. 2007) ..........................................................14

*In re Gartside*,
  203 F.3d 1305 (Fed. Cir. 2000) ..........................................................14

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367 (Fed. Cir. 1986) ..........................................................22

*Lacavera v. Dudas*,
  441 F.3d 1380 (Fed. Cir. 2006) ..........................................................41

*Microsoft Corp. v. Proxyconn, Inc.*,
  789 F.3d 1292 (Fed. Cir. 2015) ..........................................................18

*In re Morsa*,
  713 F.3d 104 (Fed. Cir. 2013) ............................................................14

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ..........................................................19

*Retractable Technologies, Inc. v. Becton, Dickinson & Co.*,
   653 F.3d 1296 (Fed. Cir. 2011) ............................................................19, 35, 36

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 (Fed. Cir. 1985) ........................................................................18

*Tafas v. Doll*,
   559 F.3d 1345 (Fed. Cir. 2009) ........................................................................42

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   135 S. Ct. 831 (2015)........................................................................................14

**Federal Statutes**

28 U.S.C. § 1295(a)(4)(A) ......................................................................................5

35 U.S.C. § 2(b)(2)................................................................................................41

35 U.S.C. § 2(b)(2)(A) ..........................................................................................41

35 U.S.C. § 6 ...........................................................................................................5

35 U.S.C. § 316................................................................................................5, 41

35 U.S.C. § 326................................................................................................5, 41

35 U.S.C. § 329.......................................................................................................5

**Other Authorities**

H.R. Rep. No. 112-98, pt. 1, at 46-47 ...................................................................42

**CERTIFICATE OF INTEREST**

Counsel for Appellant B.E. Technology, L.L.C. ("B.E.") certifies the following:

1.      The full name of every party or amicus represented by me is:

B.E. Technology, L.L.C.

2.      The name of the real party in interest represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Robert E. Freitas
Jason S. Angell
Daniel J. Weinberg
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, CA 94065
Telephone: (650) 593-6300
Facsimile: (650) 593-6301
rfreitas@fawlaw.com
jangell@fawlaw.com
dweinberg@fawlaw.com

**STATEMENT OF RELATED CASES**

U.S. Patent No. 6,771,290 ("'290") is the subject to the following appeals pending before this Court: *B.E. Tech., L.L.C. v. Sony Mobile Communications (USA), Inc.*, No. 15-1882; *B.E. Tech., L.L.C. v. Microsoft Corporation,* No. 15-1887; *B.E. Tech., L.L.C. v. Samsung Electronics America, Inc.,* No. 15-1888.

The '290 patent is also the subject to several district court cases, the related proceedings being: *B.E. Tech., L.L.C. v. Google, Inc.*, No. 2:12-cv-02830 JMP tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Amazon Digital Services, Inc.*, No. 2:12-cv-02767 JPM tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Barnes & Noble, Inc.*, No. 2:12-cv-02823 JPM tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Samsung Telecommunications America, LLC*, No. 2:12-cv-02824 JPM tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Samsung Electronics America, Inc.*, No. 2:12-cv-02825 JMP tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Sony Computer Entertainment America LLC*, No. 2:12-cv-02826 JPM tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Sony Mobile Communications (USA) Inc.*, No. 2:12-cv-02827 JPM tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Sony Electronics, Inc.*, No. 2:12-cv-02828 JPM tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Microsoft Corporation*, No. 2:12-cv-02829 JPM tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Apple, Inc.*, No. 2:12-cv-02831 JMP tmp (W.D. Tenn.); *B.E. Tech., L.L.C. v. Motorola Mobility Holdings LLC*, No. 2:12-cv-02866 JPM tmp (W. D. Tenn.).

B.E. is aware of no other related cases.

## JURISDICTIONAL STATEMENT

The Patent Trial and Appeal Board ("PTAB" or "Board") had jurisdiction over Google Inc.'s ("Google") petition under 35 U.S.C. § 6.  Google filed a petition for *inter partes* review of U.S. Patent No. 6,771,290.  A35.  The Board issued a final written decision on April 6, 2015.  A1, A28.  B.E. timely filed its notice of appeal on June 8, 2015.  35 U.S.C. § 329.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

Whether Google proved claims 2 and 3 of U.S. Patent No. 6,771,290 are anticipated by PCT International Publication Number WO 97/09682 ("Kikinis").

Whether Google proved claims 2 and 3 of U.S. Patent No. 6,771,290 would have been obvious over U.S. Patent No. 5,706,502 ("Foley").

Whether the use of the "broadest reasonable interpretation" standard for construing the claims of a patent subject to *inter partes* review is proper under 35 U.S.C. §§ 326 and 316.

## STATEMENT OF THE CASE

On October 7, 2013, Google filed two petitions requesting *inter partes* review of claims 2 and 3 of the '290 patent.  A38, A1482.  On April 9, 2014, the Board instituted *inter partes* review on two of the asserted grounds: (1) on whether

claims 2 and 3 of the '290 patent are anticipated by Kikinis, and (2) on the theory that claims 2 and 3 of the '290 patent would have been obvious over Foley. A1089.  B.E. filed a patent owner response, accompanied by a declaration of expert witness Dr. Cory Plock, and Google replied.

An oral hearing was held on December 11, 2014.  On April 6, 2015, the Board issued a final written decision in which it determined that Petitioner had shown by a preponderance of the evidence that claims 2 and 3 of the '290 patent are unpatentable on each of the grounds on which trial was instituted.  A28.

**STATEMENT OF FACTS**

The '290 patent discloses an apparatus configured with a program that is operable to, *inter alia*, access files stored in a remote user library and information resources.  *See* A125 (5:7-10) ("In accordance with one aspect of the present invention there is provided an apparatus for use by a computer to provide a user of the computer with access to information resources via the Internet or otherwise."). The remotely accessible files of the user library include such things as documents and e-mail.  *Id.*, A129 (13:3-7) ("[T]he User Database 46 of ADM server 22 can include a user library that enables the user to store files (documents, executable programs, email messages, audio clips, video clips, or other files) that can then be accessed from any client computer 40.").

At the time of the invention, computer users enjoyed limited ability to access remote information through web browsers.  *See* A124 (3:41-43, 49-52) ("Internet users typically employ browser applications and related technologies in order to access the WWW; and to locate and view files, documents and audio/video clips. . . . Browsers are useful for accessing desired files and web sites, and also have the capability of storing information regarding visited and favorite web sites on the user's computer.").  But "the usefulness and flexibility of such systems are severely limited, because each browser installation traditionally has been independent of other browser installations to which a user has access.  Thus, information within one browser is not easily transportable to the other browser." *Id.* (3:56-62).

The '290 patent claims an advance on browser-based systems by providing a program operable to receive a user profile to any computer on the network and to utilize user-selectable links contained within the profile to directly access associated files in a user library and information resources over the network.  *See* A105, A139:1-140:11).  Consequently, "multiple users of the same computer can possess Internet web resources and files that are personalized, maintained and organized." *Id.*

The apparatus of independent claim 2 and dependent claim 3 include several steps relating to enabling a user to access, via a computer network, his or her personal information resources that are stored on a server.

> 2. A computer-readable memory for use by a client computer in conjunction with a server that is accessible by the client computer via a network, the server storing a user profile and user library for each of a number of different users, with the user library containing one or more files and the user profile containing at least one user link that provides a, link to one of the files in the user library, the computer-readable memory comprising:
>
> a non-volatile data storage device;
>
> a program stored on said non-volatile data storage device in a computer-readable format;
>
> said program being operable upon execution to display a graphical user interface comprising an application window having a number of user-selectable items displayed therein, wherein each of said items has associated with it a link to an information resource accessible via the network and wherein said program is operable upon execution and in response to selection by a user of one of said items to access the associated information resource over the network;
>
> said program being operable upon execution to receive from server one of the user profiles and to display a user-selectable item for user links contained within the user profile, said program further being operable in response to selection by a user of one of the user links to access the file associated with the selected user link from the user library associated with the received user profile.
>
> 3. A computer-readable memory as defined in claim 2, wherein said program is operable upon execution and in response to selection by a user of one of said items to access the associated information resource over the network using a browser.

A139-142.  Google alleged that claims 2 and 3 of the '290 patent are unpatentable as anticipated by Kikinis and obvious over Foley.  A48, A1492.

Kikinis teaches a system "for an Internet user to access electronic documents over the Internet, such as email and specifically addressed to the user, even though access to the Internet user's usual Internet Service Provider is not available." A145 (1:7-9).  Kikinis utilizes a generic web browser stored on a client computer and remotely stored special document programs to provide access to the electronic documents.  *See* A159, FIG. 2.  Foley is a "software development and file management system that . . . enables users to create and work with portfolios of files that are distributed over the Internet."  A1577 (1:12-13).

In its final written decision, the Board used the "broadest reasonable interpretation" standard to construe the claim limitation "user library" to mean "a collection of an individual's stored files."  A8-9.  The Board also determined that Google demonstrated by a preponderance of the evidence that claims 2 and 3 are anticipated by Kikinis and would have been obvious over a Foley.  A27

**SUMMARY OF THE ARGUMENT**

The Board's determination that claims 2 and 3 of the '290 patent are anticipated by Kikinis is the result of a misinterpretation of both the '290 patent and Kikinis.

Kikinis does not disclose each of claim elements described in the limitations of the '290 patent because Kikinis does not connect a user with his or her stored files without employing various server-based programs to access the server-stored files. A system that depends on a series of other programs does not anticipate the '290 patent. The Board's finding that the ordinary web browser disclosed in Kikinis could satisfy the program limitation in the '290 patent renders claim 3 of the '290 patent meaningless. Under settled principles of claim interpretation, the Board's finding that a browser could satisfy the program limitation in claim 2 of the '290 patent was clearly erroneous.

Kikinis also does not disclose the "user library" and "file" elements of claim 2 of the '290 patent. When trial was instituted, the Board found that Google established a reasonable likelihood that Kikinis satisfied each of these limitations by the disclosure of the "database" in Kikinis for the "user library" and the user-specific "documents" stored in the database for the '290 patent's claimed "files." B.E. argued in its Patent Owner response that the "links" of the '290 patent's "user profile" are each associated with a single "file' in the "user library," and because the links identified in the Kikinis homepage are associated with the Kikinis "databases" (the "user library") and not the user-specific documents (the "file"), B.E. demonstrated that Kikinis failed to anticipate the '290 patent.

In the final decision, the Board disagreed with B.E.'s argument but only cited evidence that supports B.E.'s position. Then the Board hedged, finding that the Kikinis "database," which the Board previously identified as satisfying the "user library" element, instead disclosed the "file" element of the claim and that a collection of databases satisfied the "user library" element.

The Board's findings, both old and new, fail properly to disclose the "user library" and "file" elements of claim 2. First, a specific user document in the Kikinis database is not associated with a specific link on the Kikinis home page. Claim 2 plainly requires such an association and the prior art fails to disclose that association. Only by disregarding the express claim language, and misconstruing embodiments in the specification, was the Board able to conclude otherwise. Second, the collection of "databases" does not meet the Board's own construction of "user library" because the "databases" in Kikinis are not "an individual's stored files." While it might be said that the databases store "an individual's stored files," the databases themselves are not "an individual's stored files." The databases are the "user's provider's" files, not the user's files. The "user's provider"—whom Kikinis identifies as the entity providing the document access system—creates, maintains, and controls the databases. There is no disclosure in Kikinis suggesting that the databases are created, controlled, or maintained by an individual. Because the databases are not "an individual's stored files," a collection of the Kikinis

databases cannot satisfy the "user library" limitation and Kikinis cannot anticipate claim 2 of the '290 patent.

The Board's determination that claims 2 and 3 of the '290 patent would have been obvious over Foley is also the result of a misinterpretation of both the '290 patent and Foley.

The Board's finding that the JWS Program and JWS Browser comprise a single program is unsupported by the record and in conflict with settled principles of claim interpretation. The evidence cited by the Board is insufficient and contradicted by Google's own expert. Further, the Board's finding disregarded the doctrine of claim differentiation by reading a browser limitation into independent claim 2 of the '290 patent. The only meaningful difference between independent claim 2 and dependent claim 3 is that claim 3 adds a browser. Thus, an "especially strong" presumption exists that claim 2 does not utilize a browser. The Board cites no evidence proffered by Google to rebut this presumption. The Board's finding that a browser could satisfy the program limitation in claim 2 of the '290 patent was clearly erroneous.

The Board's determination that portfolio files are distinct from project files is inconsistent with the language of claim 2. Claim 2 requires that a user library be stored on a server. The Board construed the term "user library" to mean "a collection of an individual's stored files." The Foley system is designed so that

when a portfolio, including the collection of individual project files, is published to the Internet, it can be accessed and used by other software developers.  When a portfolio is remotely stored and publicly available, the collection of "individual project files" is not a collection of "an individual's stored files."  The "individual project files" are for public distribution and access, and thus they do not satisfy the user library limitation of claim 2.

Finally, the broadest reasonable interpretation standard should not apply in *inter partes* review proceedings.  A panel of this Court upheld the Board's use of the broadest reasonable interpretation standard in *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268 (2-1 decision), *reh'g en banc denied*, 793 F.3d 1297 (Fed. Cir. 2015) (6-5 decision).  B.E. wishes to preserve the right to challenge the Board's use of the broadest reasonable interpretation standard should *certiorari* be granted and *In re Cuozzo* overturned, or *Cuozzo* otherwise no longer govern *inter partes* reviews.

**ARGUMENT**

**I.      STANDARD OF REVIEW.**

The Board's legal conclusions (including as to claim construction) and statutory interpretation are reviewed de novo.  *Belkin International, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir. 2012).  A "clear error" standard applies in the review of subsidiary factual determinations made in the course of claim

construction. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015); *see In re Cuozzo*, 793 F.3d at 1279-80 (applying the *Teva* standard in reviewing an *inter partes* review decision). The Board's interpretation of PTO regulations is entitled to substantial deference, unless the interpretation is "plainly erroneous or inconsistent with the regulation." *In re Garner*, 508 F.3d 1376, 1378 (Fed. Cir. 2007). The Board's determination of anticipation is a question of fact reviewed for substantial evidence. *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). The Board's ultimate conclusion of obviousness is reviewed de novo and the underlying factual findings for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). The "existence of a reason for a person of ordinary skill to combine references" is a question of fact. *In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011).

## II.    CLAIMS 2 AND 3 ARE NOT ANTICIPATED BY KIKINIS.

### A.    Kikinis Does Not Disclose "A Program Stored On Said Non-Volatile Data Storage Device" That Satisfies The Limitations Of Claim 2.

The '290 patent claims "[a] computer-readable memory for use by a client computer" comprising a "non-volatile data storage device" and "a program stored on said non-volatile data storage device in a computer-readable format." A141-

142 (38:30-40:11).  In claim 2, the "program" is "operable upon execution to receive from server one of the user profiles and to display a user-selectable item for user links contained within the user profile."  A142 (40:3-6).  In addition, the "program" is "operable in response to selection by a user of one of the user links to access the file associated with the selected user link from the user library associated with the received user profile."  *Id.* (40:6-10).[1]

Google argued, and the Board agreed in its institution decision, that the generic web browser disclosed in Kikinis satisfied the "program" limitation of claim 2.  A2121 ("Petitioner also contends that Kikinis discloses 'a non-volatile data storage device' and 'a program stored on said non-volatile storage device in a computer-readable format,' as recited in claim 2.  Specifically, Kikinis describes a Web browser that provides a user station with access to a Web server via the Internet.") (internal citation omitted); *see also* A150 (6: 11-14) ("In the system of Fig. 2, user station 53 comprises, a high-speed modem 61, and a computer system 63 having well-known elements of such a computer system, including a Web-browser 109 and PPP or SLIP communication software (not shown).").  B.E.

---

[1] In claim 1, the "program" is "operable upon execution to display a graphical user interface" comprising a window "separated into a number of regions."  A141 (38:39-41).  One of those regions includes a number of "user-selectable items," some of which are "associated with a different data set, said data sets each comprising a number of links to different information resources."  *Id.*, (38:50-54).  The program is further operable "in response to selection of at least one of said items to provide the user with access to its associated data set."  *Id.*, (38:54-56).

disagreed with the Board's initial finding, arguing that (a) the program that satisfies the claim limitations described in claim 2 must reside on the non-volatile data storage device of the client computer and could not remotely reside on servers, and (b) that the browser disclosed in Kikinis could not satisfy the program limitation of claim 2. *See* A15-16 (explaining that "Patent Owner contends that Kikinis does not disclose a program stored on a client that performs the functions of a 'program' as recited in claim 2" because "Kikinis' web browser, although stored on a non-volatile data storage device on a client, does not perform the claimed functions of a 'program' because it cannot access electronic documents by itself without additional software programs stored on a remote server").

The Board distilled B.E.'s arguments as follows "[i]n other words, Patent Owner essentially contends that the client program recited in claim 2 must provide *direct* access to a file stored in a user library on the server, without the assistance of any program on the server." A16 (emphasis in original). That was not B.E.'s argument, essentially or otherwise. The Board's aim at "direct access" caused it to overlook the actual issues raised in B.E.'s response: whether the program stored on the non-volatile data storage device in Kikinis—a browser—satisfied all of the limitations of claim 2. *See id.*

B.E.'s position is simple: the '290 patent and Kikinis describe systems that provide access to remotely stored documents. The '290 patent provides access

through a program that is stored on a user's computer.  A142 (39:1-11) (claiming

"[a] computer-readable memory for use by a client computer" comprising a "non-

volatile data storage device" and "a program stored on said non-volatile data

storage device in a computer-readable format").  Kikinis provides access through a

program that is stored on a server.  A150 (6:27-31) ("Each server of electronic

document servers 69 runs software that supports a specific application.  Illustrated

are an e-mail program 79, a fax program 81, a voice-mail program 85 and various

other programs 87 including video and graphics.").  Since Kikinis does not

disclose a program that provides access to the remotely stored documents that is

stored on the client computer, Kikinis does not anticipate claims 2-3 of the '290

patent.

The Board rejected B.E.'s argument because it concluded the browser

disclosed in Kikinis, which resides on the client computer, provides access to

stored documents.  The Board held "[c]laim 2 simply requires the program to

'access the file,' without precluding the involvement of software on the server to

facilitate that access."  A17 ("The broadest reasonable interpretation of 'access,' as

used in the claim without any modifiers, encompasses the type of file access

performed by the browser in the Kikinis system.").  The Board's broadest

reasonable interpretation of access goes too far.  Although B.E. disputes the use of

the broadest reasonable interpretation standard, if the Board does use the broadest

reasonable interpretation standard, "[t]hat is not to say, however, that the Board may construe claims during *inter partes* review so broadly that its constructions are *unreasonable* under general claim construction principles." *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015). The '290 patent does not identify any programs running on the server. The preamble of claim 2 states that "the server stor[es] a user profile and user library for each of a number of different users." A142 (39:3-5). Had the patentee intended to claim a system that included the programs needed to access the remotely stored files running on a remote server, the patentee would have claimed it. Here, the claim is explicit that the server stores a user profile and user library and that the program stored on the client computer accesses the server-stored files. The Board went too far when it held that under the broadest reasonable interpretation of "access," the browser disclosed in Kikinis satisfies the "program" limitation in claim 2.

Moreover, the Board's finding that the Kikinis browser satisfies the program limitation of claim 2 violates fundamental principles of claim interpretation that the application of the broadest reasonable interpretation standard cannot overcome. "It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (citing *Fromson v. Advance Offset*

-19-

*Plate, Inc.*, 720 F.2d 1565, 1570 (Fed. Cir. 1983); *Environmental Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 699 (Fed. Cir. 1983); *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 977 (Fed. Cir. 1985)).  "Differences among claims can [] be a useful guide in understanding the meaning of particular claim terms."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (citing *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)).  "Under the doctrine of claim differentiation, 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.'"  *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1312 (Fed. Cir. 2011) (quoting *Phillips*, 415 F.3d at 1315).  "This presumption is 'especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim.'"  Id. (quoting *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed.Cir.2003)).

Claim 3 of the '290 patent, which depends from claim 2, adds a browser limitation.  *See* A142 (40:12-16) ("A computer-readable memory as defined in claim 2, wherein said program is operable upon execution and in response to selection by a user of one of said items to access the associated information resource over the network using a browser.").  The addition of the browser

limitation is "the only meaningful difference" between claim 2 and claim 3.

Google's contention, and the Board's finding, that "Kikinis's web browser is a

program stored on a client that is operable to perform the functions of the

'program' recited in claim 2, including accessing a file on the server" ignores these

well-settled principles of claim interpretation.  Accordingly, it was wrong for the

Board to find that the Kikinis browser satisfies the browser limitation of claim 2.

    B.E.'s evidence was more than sufficient to demonstrate that Kikinis did not

disclose all of the elements of claim 2.  Figure 2 of Kikinis shows "a block diagram

illustrating how Internet users may remotely retrieve an [sic] electronic documents

of all sorts from their mailboxes using the facilities of the Web and system

according to an embodiment of the present invention."  A150 (6:7-10).



Fig. 2

Figure 2 shows "[a] path from Web server 67 to data bases 89, 91, 93, and 95 by means of software links programmed into a client's home page [73]." A151 (7:11-13). It is clear that in order to access the document data bases from the home page, a user must initiate the yellow highlighted programs. Those programs are not stored on the client computers, which are identified in Figure 2 as "user station 53" and "kiosk 55" (and outlined in orange). *See* A150 (6:11-14) ("In the system of Fig. 2, user station 53 comprises, a high-speed modem 61, and a computer system 63 having well-known elements of such a computer system, including a Web-browser 65 and PPP or SLIP communication software (not shown)."). The client computers are connected to the remote servers storing the additional programs by the internet (highlighted in blue).

The evidence B.E. presented also established that a person of ordinary skill in the art understands that a system utilizing CGI and remote server programs teaches a different system than the one disclosed in the '290 patent. A762 ¶ 22 ("A POSITA would therefore know that CGI is server-side technology in which programs reside and execute on the web server—not the client computer."). The Board cited B.E.'s expert's testimony that "in any client-server system, such as the system described and claimed in the '290 patent, software on a server necessarily is required for the server to respond to a request from a client program, such as a browser." Decision at 17. But the presence of some software on a server

necessary for the server to operate does not require a different interpretation of claim 2 of the '290 patent or support the notion that a browser could satisfy the program limitation of claim 2.

Dr. Plock's testimony merely establishes that persons of ordinary skill in the art know that server software is necessary for the proper functioning of a client-server system.  As a matter well known in the art, it was appropriate that the '290 patent omit the limitation.  *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 947 ("[A] patent need not teach, and preferably omits, what is well known in the art.") (citation omitted). But even with that understanding, a person of ordinary skill in the art also would understand that the program taught in claim 2 could not be a web browser because a web browser merely provides access to the user's home page.  *See* A151 (7:17-19) ("A subscriber may use the facilities of the Web to access his or her home page on ISP 57 from anywhere on Earth, . . . .").  The browser software does not provide access to the stored electronic documents.  A150 (6:27-31) ("Each server of electronic document servers 69 runs software that supports a specific application. Illustrated are an e-mail program 79, a fax program 81, a voice-mail program 85 and various other programs 87 including video and graphics."); A150-151. (6:35-7:1) ("A single data base of set 71 includes a home page 73, individualized to a specific client, that provides software links to various lower-order data bases

maintained by electronic document server 69."); A151 (7:4-7) ("Home page 73 . . .

provides access to data bases 89, 91, 93, and 95 as described below through

software links.").

The evidence B.E. presented also established that a person of ordinary skill

in the art would understand that a web browser lacked the capabilities of the

program disclosed in the '290 patent.  A761-762 (¶ 21). ("A POSITA would

understand that a web browser makes requests to a web server and receives

responses from the web server, the contents of which are subsequently displayed in

the browser window to the user.  A POSITA would also understand that a web

browser cannot 'access [a] file' without the web server, since the web server must

execute programs to download the file to the browser, or otherwise format and

render the file in a format suitable for display on the web browser.").  Indeed, the

web browser cannot be the program disclosed in claim 2 of the '290 patent.  If it

was, then the additional limitation of claim 3 would be imported into claim 2.

Claim 3 adds a new limitation not found in claim 2.  Therefore it was erroneous for

the Board to find that the Kikinis browser could satisfy the program limitation of

claim 2 and the Board's anticipation finding should be reversed.

### B.    The One-To-One Association Of Links And Files Is Not Present In Kikinis.

The '290 patent describes a system wherein a user selects a user link from

his or her user profile to accesses a specific file stored in his or her user library.

Kikinis is different.  Kikinis discloses a system wherein a user selects a link to a database from which the user may access a specific electronic document.  This distinction alone was sufficient to establish that Kikinis does not anticipate the '290 patent.  But the Board wrongly rejected B.E.'s contention, offering instead a series of findings, none of which rises to the level needed to anticipate claim 2 of the '290 patent.

### 1.    The Association Of Specific Links With Specific Files Is Not Disclosed In Kikinis.

Claim 2 of the '290 patent provides as follows:

> said program being operable upon execution to receive from server one of the user profiles and to display a user-selectable item for user links contained within the user profile, said program further being operable in response to selection by a user of the user links to access the file associated with the selected user link from the user library associated with the received user profile.

Ex. 1001, Claim 2.  The key language is "to access ***the file associated with the selected user link*** from the user library."  *Id*. (emphasis added).  Claim 2 requires a specific file ("the file") to be associated with a specific user link ("the selected user link").  *See also* Ex. 1001, Col. 12:67-13:3 ("The user profile additionally contains bookmarks, shortcuts, and other such ***links to files*** and information resources accessible via either network 42 or the Internet 20.") (emphasis added).  Claim 2 specifically claims an association between specific user-selectable links and specific files.

Unlike the '290 patent, Kikinis teaches links to databases, not links to the specific files stored in the database. Google initially argued, and Board agreed in its institution decision, that the following elements of claim 2 of the'290 patent were disclosed by the following elements of Kikinis:

- **User Profile***:* that the individualized home page of Kikinis satisfies the claim limitation of a user profile in the '290 patent. *See* Paper 9 at 14 (stating "Kikinis discloses a user profile (home page 73)"); 15 ("Petitioner asserts that Kikinis discloses receiving one of the user profiles (user's home page 73) from the server . . . .");

- **User Library***:* that the lower-order electronic document data bases satisfy the claim limitation of a user library. *See* Paper 9 at 14 ("Petitioner asserts that Kikinis discloses . . . a user library (user-specific databases, such as e-mail database 89, fax database 91, voice-mail database 93, and electronic document database 95, all of which contain user-specific files) for each of a number of different users."); 15 (stating "the user library (user-specific database for e-mail, fax, voice-mail, or electronic documents)");

- **File***:* that the electronic documents in the lower-order data bases satisfy the claim element of files in the user library. Paper 9 at 14 (referring to Google's assertion that user's files include "electronic documents, including e-mail messages and faxes"); 15 (stating "accessing the file (e.g., electronic document, e-mail, fax, or voice-mail)"); and

- **User Link**: that the "active selection areas" of the Kikinis home page satisfy the claim element of user links in the user profile. Paper 9 at 14 ("Petitioner asserts, Kikinis discloses a user profile (home page 73) that has links to the user's files (electronic documents, including e-mail messages and faxes); 15 (stating "displaying a

> user-selectable item for user links within the user profile
> (links or buttons that can be selected by the user)").

But since Kikinis only discloses links to databases (i.e., the user library), not files, B.E. established that Kikinis fails to disclose the one-to-one association required by the claim language "the file associated with the selected user link."  Kikinis explicitly discloses that links are associated with databases.  *See* A151 (7:18-19) ("[U]se the link features in the home page to access the electronic data bases."); *id.* A152 (8:3-4) ("By selecting button 117 a user is linked to data base 93 . . . ."); A2511-12 (334:20-335:20) (Mr. Gray testifying on cross-examination that  the user is linked to database by selecting button 117).

Despite establishing that the links on the Kikinis home page are not associated with specific files in the Kikinis databases, the Board got side-tracked with B.E.'s terminology intended to illustrate the distinction between the system of the '290 patent and Kikinis and lost sight of B.E.'s argument.  *See* A17 ("[T]he plain language of claim 2 does not require 'one-click' access or a 'direct link' to files.").  As a consequence, the Board never addressed whether the '290 patent requires the one-to-one association of links and files as the claim language plainly entails.

In support of its misguided attack on B.E.'s attempts to describe the one-to-one association requirement, the Board pointed to specific embodiments from the specification that it argued disproved "one-click access" or a "direct link."  But the

examples cited by the Board all support B.E.'s position that there must be a one-to-one association between links in the user profile and files in the user library.

For example, the Board cites the specification at Column 15, stating "a library icon . . . , when selected, provides a display as shown in FIG. 5c which contains a list of all of the files contained in the user library. *From here*, the user can access any of the files contained in his or her user library . . . ." A17 (emphasis in Decision). But contrary to the Board's conclusion, this description of the organization of the interface of the user profile actually supports B.E.'s position because it shows that the displayed user links enable the user "from here"—referring to the user profile—to access the files in the user library. This is consistent with B.E.'s contention that "the file associated with the selected user link" requires that a single file be associated with a single user link. The Board omitted the rest of the sentence, choosing instead to end with an ellipsis. The full sentence provides "[f]rom here, the user can access any of the files contained in his or her library and can <u>associate</u> any of those <u>files</u> with the business category, in which case <u>a link to that file</u> will then appear in the business category window of FIG. 5b." A130 (15:56-60). The fact that the user profile can be organized into subject matter categories does not impair the fact that links and files have a one-to-one association. In fact, it makes organizational sense for the profile to be

organized by subject matter categories when there will be a high number of links , each associated with a separate file or information resource.

Likewise, the Board misinterpreted another aspect of the specification that it wrongly believed pointed away from B.E.'s interpretation of the claim language. The Board cited another passage from Column 15:

> The user has the ability to subscribe the channel by making a direct link to a file, *or* by combining various files under some category, *or* by providing a drop down list to a subscribed channel.

A17 (emphasis in the Decision). While acknowledging that the first clause supports B.E.'s construction, *id*. ("Although the '290 patent describes direct links to files, . . . ."), the Board nevertheless found that the other two examples described in the second and third clauses point away from B.E.'s position. Those examples, however, support B.E. because "combining various files under some category" describes organizing the user profile so that various links to files are organized by category, while "providing a drop down list to a subscribed channel" refers to another potential display of the user links (in the form of a drop down list). The reference to "file" in the specification describes the links to the files, not the files themselves, because this section of the specification describes the user profile. As claim 2 makes clear, files are stored in the user library, not the user profile, and the user profile contains the links to the files. *See* A129 (13:41-43) ("Before describing the various modules in detail, reference is made to FIG. 5, which

depits a Windows^TM version of the user interface provide by GUI module 52.");
A130 (15:4-9) ("[E]ach bookmark category icon 80 represents a hyperlink channel
category that contains related hyperlink bookmarks.  Moreover, the links or
bookmarks need not be to web sites only, but can be links or shortcuts to
documents and other files, whether stored locally on the user's computer or
remotely on a server."); *id*. (15:31-34) ("The content of these channel categories
can be developed by the user simply by dragging icons representing URLs or files
onto the window of FIG. 5a or onto the icon 80 representing the desired channel
category.").  Because the user profile contains links to files stored in the user
library, the disclosure of the various ways in which the user profile can be
organized to manage a user's links to his or her files does not undercut B.E.'s
contention that "the file associated with the selected user link" requires a one-to-
one association of the links in the user profile and the files in the user library.

The Board incorrectly decided that Kikinis satisfied "the file associated with
the selected user link" claim limitation.  *See* A18 ("Kikinis clearly discloses links
on a user's home page to individual, electronic documents, which are 'files' as that
term is defined in the '290 patent.").  Kikinis does not disclose links on a user's
home page to individual files.  Kikinis discloses links to databases from which
individual files may be accessed.  While the Board cited B.E.'s expert, Dr. Plock,
for support, *see id*. (stating "Dr. Plock[] agrees that this passage from Kikinis

discloses links to electronic documents"), Dr. Plock's actual testimony provides no support. *See* A2168, ¶ 24 ("Kikinis discloses, at most, user links associated with databases."). There is no dispute that a button on the Kikinis home page is a link associated with a database. Because the home page buttons are not associated with the files stored in the database, Kikinis does not satisfy the "the file associated with the selected user link" limitation the claim 2. There is no evidence supporting the Board's finding that the Kikinis home page buttons are associated with a specific electronic document and the Board's decision must be reversed.

### 2. The Board Unsuccessfully Shifts Gears In Its Final Decision.

Even though the Board rejected B.E.'s argument, in an overhaul of the foundational mapping of the claim in the institution decision, and as argued by the petitioner, the Board shifted gears in the final decision, finding that "[t]he databases disclosed in Kikinis . . . are files associated with selected user links, as recited in claim 2." A19.

The Board's new finding was premised on the definition of "file" in the '290 patent. "File" is defined as "[a]ny digital item, including information, documents, applications, audio/video components, and the like, that are stored in memory and is accessible via a file allocation table or other pointing or indexing structure." A124 (4:25-28); *see also* A18. The Board's new finding that the Kikinis database can be the file is wrong.

If the Kikinis database is the "file" of the '290 patent, then what is the "user library?" The Board previously determined that the "user library" was the "database." But now the "database" is the "file." To avoid this problem, the Board held that Kikinis disclosed a user library in the form of "a collection of databases stored for a user." A19; *see also id*. at 11 (construing "user library" to be a "collection of an individual's stored files"). But the databases disclosed in Kikinis are not "<u>an individual's</u> stored files." There is no disclosure that the user creates, maintains, or controls the database. To the contrary, Figure 2 of Kikinis shows the "User's Provider" provides the database. *See* A159, FIG. 2.

The Kikinis system is a third party provided document access system. It is not a system that the user creates. While a user might be able to store personal electronic documents in the databases, the user does not provide the database and the database is not one of the user's stored files. The database is part of the infrastructure of the Kikinis system. Nothing in Kikinis suggests or otherwise requires that the user of the Kikinis system have control over the database. To the contrary, Kikinis states that each database is "assigned to or associated with" a different user. A150 (6:34-35). The "assignment" of the database by, for example, a system administrator to the user demonstrates the fallacy that databases are an individual's stored files. Suggesting otherwise would mean that the database in which a Gmail or Yahoo! mail user's email resides is the email user's database.

Because Kikinis does not disclose a "user library" when the Kikinis database is considered the "file," and Kikinis fails to disclose a specific user link associated with a specific user file, Kikinis does not anticipate claim 2 of the '290 patent.

## III.   CLAIMS 2 AND 3 ARE NOT INVALID FOR OBVIOUSNESS OVER FOLEY

### A.   Foley Does Not Disclose "A Program Stored On Said Non-Volatile Data Storage Device" That Satisfies The Limitations Of Claim 2.

As discussed above, the '290 patent claims "[a] computer-readable memory for use by a client computer" comprising a "non-volatile data storage device" and "a program stored on said non-volatile data storage device in a computer-readable format."  A142 (40:1-11).  The "program" is "operable upon execution to receive from server one of the user profiles and to display a user-selectable item for user links contained within the user profile."  *Id.* (40:3-6).  In addition, the "program" is "operable in response to selection by a user of one of the user links to access the file associated with the selected user link from the user library associated with the received user profile."  *Id.* (40:6-10).

B.E. argued that Foley failed to teach "a program stored on a non-volatile data storage device that performs the functions recited in claim 2."  A25.  In particular, B.E. argued that Foley disclosed two programs: the JWS Program and the JWS Browser, neither of which is capable of performing all of the elements of claim 2.  A27 ("Patent Owner contends that Foley describes two separate

programs—JWS Program 150 and JWS Browser 154A—and that neither one alone is operable to perform all the recited functions."). The JWS program, for instance, is responsible for controlling the activities occurring locally on the user's computer, while the JWS Browser, on the other hand, is responsible for all activities involving either remotely stored portfolios and project files.

The Board disagreed with B.E.'s argument and concluded that the JWS Program and JWS Browser satisfied the "program" limitation of claim 2. PTAB 28. To begin, the Board found that a person of ordinary skill in the art would understand that the JWS Program is a program, and that the JWS Browser is a program module within the JWS Program. A27 ("[U]nder the definition of 'program' in the '290 patent, a person of ordinary skill in the art would understand Foley's JWS program to be a 'program' and the JWS browser to be one 'program module' within the JWS program."). There was no evidence of record to support the Board's finding.

The only evidence on which the Board relied fails to rise to the level sufficient to sustain the Board's finding. The Board merely cited two excerpts from the Foley specification, stating "[t]he JWS program 150A has an *integrated* JWS Browser 154A that allows a user seamlessly to create and work with portfolios that are remote . . . or local" and "the JWS program 150A *incorporates* a JWS Browser 154A." A27 (emphasis in Decision). Remarkably, Google's expert,

Mr. Gray, not only offered no testimony that the JWS Browser was a program module within the JWS Program, but he also stated that one of the excerpts the Board relied upon is indecipherable.

When asked about the meaning of "the JWS program 150A *incorporates* a JWS Browser 154A," A27 (emphasis in Decision), Mr. Gray offered the following:

> **The -- the -- the sentence says that 154 -- the JWS program incorporates a JWS browser. I don't know what that means.** Does that mean that some of the user interface elements of 154A are used by 150? It's a scope question. I don't know how to do that without doing the analysis. And it may not reveal it at that.

A2480 (303:13-22) (emphasis added).  Accordingly, the excerpts from the patent on which the Board relied are themselves, in the absence of additional evidence, sufficient to support a finding that he browser is a module within the  JWS Program.

Next, the Board found that "[e]ven if the JWS program and JWS browser are considered to be separate program modules . . . we find they are 'related' program modules that together comprise a 'program.'"  A28.  Here again, the evidence suggested otherwise.  A2173, ¶ 36 ("In all other respects, I have found the features and capabilities of the JWS browser and JWS program listed above to be substantially different. Therefore, the two sets of program components are not 'related,' and are therefore different programs.").  Despite Dr. Plock's

contradictory testimony, the Board found that the Foley program employs a browser and that the Foley program satisfies claim 2 of the '290 patent.

In dismissing B.E.'s argument, the Board disregarded unambiguous Federal Circuit precedent, just as it did when analyzing the Kikinis reference. Dependent claim 3 of the '290 patent claims a browser limitation. Claim 2 does not. Under the doctrine of claim differentiation, the introduction of a browser in claim 3 creates an "especially strong" presumption that independent claim 2 does not incorporate a browser. Therefore, unless this presumption is rebutted, claim 2 cannot be anticipated by Foley browser.

As noted above, "[u]nder the doctrine of claim differentiation, 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.'" *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1312 (Fed. Cir. 2011) (quoting *Phillips*, 415 F.3d at 1315). "This presumption is 'especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim.'" *Id.* (quoting *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed.Cir.2003)).

In this case, the only meaningful difference between independent claim 2 and dependent claim 3 is the addition of a browser in claim 3.  *See* A142 (40:12-16) ("A computer-readable memory as defined in claim 2, wherein said program is operable upon execution and in response to selection by a user of one of said items to access the associated information resource over the network using a browser.").  An "especially strong" presumption exists that claim 2 does not utilize a browser.  The Board cites no evidence proffered by Google to rebut this presumption and makes no finding of its own.  The Board's finding erroneously renders "the dependent claim[] completely superfluous." *Retractable Technologies, Inc.* at 1312.

## B.    Foley Does Not Disclose A "User Library."

B.E. argued that the Foley system did not anticipate the '290 patent because Foley did not disclose a "user profile" and "user library."  Decision at 26 ("Patent Owner contends that Foley does not teach a 'user profile' separate from a 'user library.'").  The '290 patent defines a profile as "user-specific information relating to an individual using a computer."  A124 (4:52-53).  The Board construed "user library" to mean "a collection of an individual's stored files."  A11.  Claim 2 makes clear that the user profile and user library are stored on the server.  A142 (39:3-5) ("[T]he server storing a user profile and user library for each of a number of different users, . . . ."); *Id.* (40:3-6) ("[S]aid program being operable upon

execution to receive from server one of the user profiles and to display a user-selectable item for user links contained within the user profile, . . . .").

Accordingly, for Foley to teach a separate "user profile" and "user library," Foley must disclose, among other things, elements, stored on a remote server, containing "user-specific information relating to an individual using a computer" and "a collection of an individual's stored files." As B.E. argued below, Foley fails to provide such disclosure.

Under the Board's analysis, the portfolio file taught by Foley teaches a user profile because "the portfolio file is a file that provides references or links to individual project files." A26. The collection of "individual project files," according to the Board, discloses a separate user library. A26 ("The collection of project files, on the other hand, is the plurality of individual project files that can be linked from the portfolio file."). But according to the Board's findings, the "collection of project files" cannot satisfy the "user library" limitation because a "user library" must be "a collection of <u>an individual's</u> stored files." A11. The "individual project files" that the Board concluded constitute a separate "user library" are not "an individual's stored files."

To evaluate the sufficiency of the Foley teaching, it is necessary to focus on the Foley disclosure that relates to storing items on a remote server. Foley discloses that a user of the portfolio management system may store his or her

portfolios (including the portfolio file and its constituent project files) locally or on a remote server.  A1570 (Abstract) ("The software portfolios and/or their constituent projects can be stored on the system hosting the portfolio management system or on any remote system that can be accessed via the Internet using standard Internet communications protocols, such as FTP or HTTP.").  Any teaching related to the storage of the portfolio on the local system has no bearing on the obviousness analysis here because claim 2 of the '290 patent involves remote storage of the "user profile" and "user library," not the local storage of a "user profile" and "user library."

Foley explains that a user may "create a new portfolio" and that "once a new portfolio has been created, its creator can keep it private or can publish it on the Internet to be accessed by others."  A1580 (8:11-13).  When a portfolio, including the collection of individual project files, is published to the Internet, the Foley system is designed so that the project files can be accessed and used by other software developers.  *See* A1570 (Abstract) ("The PMS also allows users to publish portfolios and projects on the Internet to be used by others within certain limits set by the publisher."); *see also* A1582 (11:41-43) (explaining the JWS Editor includes a Publish Folder, which contains "information needed to allow the project to be copied by other users"); *id*. (12:7-10) ("Because the preferred embodiment of the JWS 150A allows a user to employ portfolios and projects from

remote sources and to publish their own portfolios and projects for others' use, this

embodiment also provides a way for creators of a project to indicate certain

attributes of a project that are relevant to publication of a project on the Internet.");

A1583 (13:23-25) ("The Internet-awareness of the present invention also enables

users to publish their own portfolios so they can be accessed and used by others

over the Internet.").  When a portfolio is remotely stored and publicly available,

the collection of "individual project files" is not a collection of "an individual's

stored files."  The "individual project files" are for public distribution and access.

In other words, the Foley system describes a "public library" rather than a "user

library."

The "user library" of the '290 patent, on the other hand, is designed to keep

an individual user's files private.  *See* A105 (Abstract) ("Furthermore, multiple

users of the same computer can possess Internet web resources and files that are

personalized, maintained and organized.").  The '290 patent describes a system

that provide users with a personalized computing experience, regardless of which

computer they use.  *See id.*  The '290 patent's descriptions of the user library are

consistent with this stated purpose.  *See* A125 (5:43-51) ("[T]he apparatus further

includes user specific maintenance and organization of that user's individual files .

. . .");  A129 (13:7-12) ("As will be appreciated, by storing the user profile and user

library on server 22, the user can have world-wide access to their preferences,

addresses, bookmarks, email, and files without having to physically transport them from one place to another."); A140 (35:64-66) ("The user library can be used to store software, business presentations, blueprints, plans, movies, musical albums, games, and the like.").  Unlike software development project for which the Foley system was created, the files of the '290 patent's "user library," like "business presentations" and "blueprints," are not intended to be shared with the public.  The "individual stored files" in the "user library" of the '290 patent, unlike the "individual project files" of Foley, are "an individual's stored files."  The remotely stored project files in Foley are not.  The Board's erroneous finding that Foley's portfolio file and collection of project files satisfy the claim elements of the "user profile" and "user library" should be reversed.

## IV.  THE BROADEST REASONABLE INTERPRETATION STANDARD SHOULD NOT APPLY IN *INTER PARTES* REVIEW PROCEEDINGS.

B.E. recognizes that this Court upheld the Board's use of the "broadest reasonable interpretation" ("BRI") standard in *In re Cuozzo*, F.3d at 1278, and that that decision is binding on this panel unless overturned by the en banc Court or the Supreme Court.  B.E. reserves the right to challenge the Board's use of this standard if the Court affirms the Board's construction of the disputed terms discussed herein.

Should *In re Cuozzo* be overturned during the pendency of this appeal, B.E. submits that the BRI standard should not apply in *inter partes* review proceedings, and requests that claim construction be carried out in a manner consistent with the rules that would be applied in B.E.'s infringement actions against Google, Microsoft, and others in the United States District Court for the Western District of Tennessee.

B.E. argued in the proceeding below that the adoption of the BRI standard exceeds the PTO's limited rule making authority. It is settled that the office has no substantive rule making authority. *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336 (Fed. Cir. 2008); *see also Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006). The adoption of the BRI standard was substantive because it can affect the meaning of the claims and ultimately the validity of the patent. The Board has acknowledged that there is no dispute that "[p]rior to the AIA, 35 U.S.C. § 2(b)(2) was said to be the 'broadest of the Office's rulemaking powers,'" and those powers were limited to the promulgation of procedural rules.

The argument that 35 U.S.C. §§ 326 and 316 granted new rule making authority has no merit. Both of these sections refer to "conduct" of, respectively, inter partes reviews and post grant reviews. The use of the word "conduct" does not signify "substance." The language of the statute is consistent with language of 35 U.S.C. § 2(b)(2)(A) allowing the PTO to govern the "conduct" of proceedings

in the Office.  The Federal Circuit has recognized that this language confers no substantive authority.  *Tafas v. Doll*, 559 F.3d 1345, 1352 (Fed. Cir. 2009), vacated and reh'g en banc granted, 328 F. App'x 658 (Fed. Cir. 2009), stayed, 331 F. App'x 748 (Fed. Cir. 2009).  Nothing contained in either section 316 or 326 confers substantive rule-making authority.

*Inter partes* reviews were intended by Congress to provide an adjudicative alternative to the determination of patent validity.  "The Act ***converts inter partes reexamination from an examinational to an adjudicative proceeding***, and renames the proceeding '*inter partes* review.'"  H.R. Rep. No. 112-98, pt. 1, at 46-47 (emphasis added).  In an *inter partes* review, the patent owner does not have the right to amend claims that existed during examination and reexamination.  Under these circumstances, application of the BRI standard is not consistent with the letter or spirit of the America Invents Act.

## V.    CONCLUSION.

For the foregoing reasons, the Court should reverse the PTAB's Final Written Decision finding that claims 2 and 3 of the '290 patent are unpatentable.

Respectfully submitted,

Dated:  October 13, 2015

*/s/ Daniel J. Weinberg*
Daniel J. Weinberg

## CERTIFICATE OF SERVICE

It is certified that copies of the foregoing has been served via electronic

means addressed to the persons at the address below:

Clinton H. Brannon
Brian A. Rosenthal
Andrew J. Pincus
MAYER BROWN, LLP
cbrannon@mayerbrown.com
brosenthal@mayerbrown.com
apincus@mayerbrown.com

Date:  October 13, 2015                         */s/ Daniel J. Weinberg*
                                                Daniel J. Weinberg

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the Appellant's Opening Brief is proportionally spaced, in a typeface of 14 points or more and contains 9,218 words, exclusive of those materials not required to be counted under Rule 32(a)(7)(B)(iii).

*/s/ Daniel J. Weinberg*
Daniel J. Weinberg

## ADDENDUM

Final Written Decision dated April 6, 2015

U.S. Patent 6,771,290